UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Lindsey Taylor as Personal Representative to the Estate of C.A.

    Plaintiff,

v.

LAXMI OF NAPLES, LLC.

    Defendant

Case No. 2:24-cv-360

## COMPLAINT

COMES NOW the Plaintiff Lindsey Taylor, as Personal Representative to the Estate of C.A., by and through the undersigned counsel, and respectfully, submits her Complaint for damages and makes the following averments.

## INTRODUCTION

1. This action for damages is brought by Lindsey Taylor as Personal Representative to the Estate C.A. a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2. Lindsey Taylor was appointed the Personal Representative to the Estate C.A. on or about April 5, 2024 by the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida, Probate Division.

3. The sex trafficking of C.A. at the subject hotel occurred in December 2015.

4. LAXMI OF NAPLES, LLC ("Defendant") was the owner and operator of the subject

1

premises and subject hotel located at 3880 Tollgate Boulevard Naples, Florida 34114 during the relevant time period, and prior thereto, and as such responsible for the subject hotel doing business as the Super 8.

5. Sex trafficking is defined under 22 U.S.C. § 7102 (11) as, "The recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

6. C.A. meets the definition of a sex trafficking victim as she was induced by force, fraud, and coercion by her traffickers to engage in commercial sex at the subject hotel in December 2015. She was psychologically and physically prohibited from escape from her traffickers.

7. The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act. Section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

8. As it pertains to the subject defendant, C.A. was sex trafficked at the aforesaid hotel by her traffickers in December 2015.

9. Sex trafficking occurred at this subject hotel in 2015 and, upon information and belief, prior thereto.

10. C.A. gave a non-party deposition on January 6, 2022 in the matter of S.Y. v.

Wyndham, et al Docket No.: 2:20-cv-626; C.S. v. Wyndham, et al Docket No.: 2:20-cv-639 wherein she averred as to her being trafficked by her two traffickers at various hotels in Naples, Florida including the subject hotel herein.

11. C.A.'s traffickers were arrested on human trafficking charges and are, upon information and belief, still incarcerated.

12. As a hotel owner and hotel operator, Defendant controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where C.A. was sex trafficked.

13. The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendant on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be all the more vigilant and proactive in preventing this conduct.

14. Years before C.A. was trafficked, Defendant knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking. By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

15. Before and during the relevant time period Defendant failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

16. During the time period of trafficking of the C.A. at the subject hotel which occurred

in 2015, Defendant failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at this subject hotel including as to C.A. in violation of the TVPRA.

17. Had the Defendant timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by C.A. at the subject hotel would have been prevented or mitigated.

18. Due to the failure of Defendant to timely and properly implement anti-trafficking policies and practices, C.A. was repeatedly victimized and trafficked for sex on defendant's premises in violation of the TVPRA.

## **PARTIES**

19. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, C.A.'s name (and that of an additional victim) is not contained in this Complaint to protect the safety, privacy and identity of this subject sex trafficked victims. Nationwide similarly situated Plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

20. Plaintiff Lindsey Taylor is presently a resident of Florida.

21. C.A. prior to her death was a resident of Florida.

22. Plaintiff's decedent was born in March 1984 and died on August 3, 2022.

23. As it pertains to this Defendant, C.A. was sex trafficked at the subject hotel located at 3880 Tollgate Boulevard Naples, Florida 34114 in December 2015.

24. S.Y. was sex trafficked contemporaneous with the trafficking of C.A. at the subject hotel by same traffickers in December 2015.

25. At all times relevant and material, LAXMI OF NAPLES, LLC., was authorized to

4

do, licensed to do, and was doing business in the State of Florida offering the subject hotel as a place of public lodging.

26. Upon information and belief, Defendant LAXMI OF NAPLES is a Limited Liability Company with members Chetan Patel and Pankajkumar Patel who are located in Port Charlotte, FL and Planation, Florida.

## JURISDICTION AND VENUE

27. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

28. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and Defendant conducts business within this District pursuant to 28 U.S.C. § 1391(b)

## CAUSE OF ACTION

### A. VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

29. Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendant.

30. In support of her action against Defendant, Plaintiff adopts and incorporates by reference all paragraphs contained in this Complaint set forth above as if fully set forth herein.

31. As it pertains to the above captioned Defendant, C.A. was sex trafficked at the subject

hotel then doing business as the SUPER 8 located at 3880 Tollgate Boulevard Naples, Florida 34114 in 2015.

32. C.A. was a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

33. C.A. was induced by force, fraud, and coercion by her traffickers to engage in commercial sex at the subject hotel in December 2015.

34. C.A.'s traffickers, upon information and belief, still remain incarcerated for human trafficking charges. Each trafficker entered a no-contest plea in Collier County Circuit Court on charges of sex trafficking, and other charges.

35. C.A.'s traffickers operated a sex trafficking ring in Naples Florida from approximately mid-October 2015 to approximately January 8, 2016 and during that time period utilized the subject hotel, in part, to carry out sex trafficking of numerous victims including C.A.

36. As is demonstrated by Super 8 registration receipts, a trafficker of C.A. registered as a guest at the subject Super 8 for a stay from December 8, 2015 through and including December 13, 2015 and rented room 243; during which time C.A. was trafficked.

37. Later in December 2015, C.A.'s traffickers returned to the subject hotel and said trafficker again was issued room 243 for a rental from December 25, 2015 through and including December 29, 2015; during which time C.A. was trafficked.

38. In 2015, and contemporaneous with the trafficking of C.A. on the subject premises, other adult victims were sex trafficked on said premises, by C.A.'s traffickers, including but not limited to S.Y.

39. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591. Separately, §1595 of the TVPRA provides individuals who are

6

victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking crime. See 18 U.S.C. §1595(a). More specifically, §1595 provides for three distinct causes of action: (1) a claim against the trafficker who directly violated §1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil defendant who did not violate §1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil defendant.

40. The Collier County Sheriff's Office determined that C.A.'s traffickers were "utilizing and/or forcing by means of coercion the female victims of the human trafficking scheme, [which included C.A.] to commit sexual acts and perform other activities consistent with slave labor."

41. Defendant knowingly benefited from the sex trafficking of C.A. at the subject hotel by receiving payment for the room(s) rented by her traffickers (or at the direction of her traffickers) that were used for sex trafficking, including as to C.A., in violation of the TVPRA in December 2015.

42. Defendant rented a room(s) to individual(s) it knew or should have known were engaged in sex trafficking, and of C.A. in particular, in violation of the TVPRA.

43. The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

44. C.A.'s traffickers took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotel during the time that C.A.

was being sex trafficked there in violation of the TVPRA.

45. In addition, Defendant received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as C.A., upon information and belief, was advertised by her traffickers online) and from such Wi-Fi service Defendant, upon information and belief, received financial benefit.

46. C.A. was primarily advertised by her trafficker(s) on Backpage.com. And her trafficker(s) posted photographs of C.A. on Backpage.com.

47. All proceeds earned by C.A from commercial sex she was induced by her traffickers to engage in, at the subject hotel, was given to her traffickers.

48. Defendant participated in a venture by operating the subject hotel that rented room(s) to individuals that Defendant knew or should have known were involved in sex-trafficking, including as to C.A., in violation of the TVPRA.

49. During the time C.A. was trafficked at the subject hotel in 2015, upon information and belief, C.A.'s trafficker(s) had direct interaction with hotel employee(s) and staff by means of paying, befriending, and/or compensating employee(s) and staff member(s) to act as lookout(s)/informant(s) for C.A.'s traffickers so as to inform the traffickers of police activity or other similar type alerts.

50. In this case, during the relevant time period alleged herein, Defendant took part in a common undertaking or enterprise involving risk and potential profit with C.A.'s traffickers that violated the TVPRA.

51. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

52. Defendant operating the subject hotel and renting out room(s) to C.A.'s traffickers was an enterprise involving risk and potential profit.

53. Defendant operating the subject hotel and renting out room(s) to C.A.'s traffickers was an enterprise involving risk and potential profit which violated the TVPRA as to C.A..

54. Defendant had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA and including as to C.A..

55. A continuous business relationship existed between the subject hotel, its agents, employees and staff, and C.A.'s traffickers, in part, in that the defendant repeatedly rented rooms, and renewed room rentals, to individuals they knew or should have known were involved in sex trafficking on the premises, including as to C.A.

56. C.A.'s traffickers had prior commercial dealings with the subject hotel which the traffickers and Defendant wished to reinstate for profit when C.A.'s traffickers repeatedly rented rooms that were used for trafficking of victims including C.A..

57. Defendant knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to C.A. due to the many red flags then and there existing, including but not limited to: (a) constant foot traffic of sex buyers to the traffickers rented room(s) to have sex with trafficked victims; (b) constant foot traffic of drug buyers to the traffickers rented room(s) to buy drugs from the traffickers; (c) trafficked victims would walk around the subject hotel common areas drug and/or alcohol impaired, sleep impaired, hygiene impaired, behavior impaired, malnourished, in sexually explicit clothing, and with bruises and/or drug caused facial skin picking blemishes; (d) suspicious individuals loitering outside the hotel room(s) when a sex buyer would enter a room(s); (e) inside the hotel room(s) rented by the traffickers (or at the

direction of the traffickers) there was a suspicious bunch of people and suspicious items including weapons, cash, drugs, drug paraphernalia, condoms, lubricants; (f) traffickers monitoring hotel hallway or door of room(s) or walking hotel perimeter; (g) other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

58. This subject hotel was privately owned and management, at the time at issue, reserved the right to refuse services to anyone.

59. Defendant's staff witnessed and observed on a regular and frequent basis signs and indicators of sex trafficking including as set forth in paragraph 57 above.

60. When being trafficked at the subject hotel during 2015, C.A. interacted with Defendant staff on a daily basis, and Defendant staff witnessed and observed C.A., her trafficker(s), other victim(s) as well as a frequent procession of sex buyers going in and out of the subject rented room(s), contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

61. Defendant's failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing C.A.'s severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries including PTSD and her hastened death on August 3, 2022.

62. This hotel, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

63. C.A. testified that being trafficked at the subject hotel, in part, was "one of the worst things I have ever gone through because every day was hell."

64. C.A. being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, PTSD, and continued drug abuse which in turn affected daily functioning; and all of the foregoing was a substantial factor in causing death of C.A. on August 3, 2022.

65. As a direct and proximate result of Defendant's multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel property, C.A. was sex trafficked, sexually exploited, and victimized repeatedly at Defendant hotel in violation of the TVPRA.

66. As a consequence of being sex trafficked at the subject hotel, C.A. suffered substantial economic, physical, mental, emotional, psychiatric, psychological injuries and hastened death (on August 3, 2022) as the result of being sex trafficked, drugged by her traffickers, and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## AS AND FOR A SECOND CAUSE OF ACTION
## (WRONGFUL DEATH)

67. Plaintiff, repeats, reiterates, and re-alleges each and every allegation contained in the foregoing paragraphs 1-28 of this Complaint, with the same force and effect as if hereinafter set forth more fully at length.

68. As a result of the foregoing acts and/or omissions on the part of defendant its agents, servants, staff, independent contractors, and employees and defendant, Plaintiff's decedent, C.A. died on August 3, 2022, and said death was proximately caused in whole or in part by the tortious conduct of the Defendant herein.

69. Plaintiff's decedent, C.A. left next of kin and/or distributees surviving who, by reason of the Decedent's death, have suffered a pecuniary loss including but not limited to support, income, guidance, counseling and services of the decedent, and were all permanently damaged thereby.

70. By reason of the injuries and death of C.A. there were incurred certain medical, hospital and funeral and other bills and expenses, and said distributees have been and will be deprived of her support, maintenance, guidance, care, and other services set forth above.

71. As a result of the foregoing, Plaintiff decedent's estate, and next of kin and distributees, were damaged, and seek compensation, in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as identified in the above-referenced Count and as follows:

   a) All available compensatory damages for the described losses with respect to the

above cause of action;

b) Past and future emotional distress;

c) Consequential and/or special damages;

d) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

e) Disgorgement of profits obtained through unjust enrichment;

f) Restitution;

g) All damages allowable under the TVPRA;

h) Reasonable and recoverable attorney's fees;

i) Punitive damages with respect to each cause of action;

j) Costs of this action; and

k) Pre-judgement and all other interest recoverable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: April 21, 2024

Respectfully submitted,

/s/Kelly Hyman
THE HYMAN LAW FIRM, PA
515 North Flagler Drive, Suite 350
West Palm Beach, FL 33401
Telephone: 561.538.9050
kellyhyman@thehymanlawfirm.com

Randolph Janis
Randolph Janis, Esq.
*Application for Pro Hac Vice admission to be made*
Douglas and London, P.C.

13

59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

***Attorneys for Plaintiff***